1

2

3                                                            O

4                                                    CLOSED

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   JAMES H. DONELL, Receiver        )   Case No. CV 12-00519 DDP (JEMx)
     for NewPoint Financial           )
12   Services, Inc., and NewPoint     )
     Mortgage Bankers, Inc.,          )   **ORDER DENYING DEFENDANT'S MOTION**
13                                    )   **TO SET ASIDE AND VACATE DEFAULT**
                    Plaintiffs,       )   **AND DEFAULT JUDGMENT PURSUANT TO**
14                                    )   **FED. R. CIV. P. 60(b)(1)**
          v.                          )
15                                    )
     MAJID MANDI GHOMI                )   [Dkt. No. 20]
16                                    )
                    Defendant.        )
17   _____ )

18        Presently before the Court is Defendant's Motion ("Motion") to

19   set aside and vacate the default and default judgment pursuant to

20   Fed. R. Civ. P. 60(b)(1) .  Having considered the parties'

21   submissions and heard oral argument,[1] the Court denies the Motion

22   and adopts the following Order.

23   **I.    BACKGROUND**

24        The Defendant Majid Mandi Ghomi ("Defendant") invested

25   $40,000.00 (the "Principle Investment") with NewPoint Financial

26   Services Inc. ("NewPoint"), a defendant in a separate enforcement

27   action with the SEC, entitled <u>Securities and Exchange Commission v.</u>

28   _____

          [1] No appearance was made on behalf of Defendant at the
     hearing.

1  *NewPoint Financial Services, Inc.*, et al., Case No. 10-CV-0124-DPP-

2  (JEMx) ("SEC Action"). (Complaint ¶ 12.) In the SEC Action, the SEC

3  alleged that NewPoint was operating a Ponzi Scheme and returned

4  money to certain favored investors at the expense of other

5  investors who were not repaid. (Id. at ¶¶ 55-57.)  As a result of

6  the SEC Action, the Court appointed Plaintiff, James H. Donell

7  ("Plaintiff" or "Receiver") as acting permanent receiver of

8  NewPoint and specifically authorized the Receiver to bring an

9  action against the Defendant. (Id. at ¶¶ 22-23.) The Receiver

10  alleges that the Defendant invested $40,000.00 in NewPoint

11  ("Principle Investment"), but received payments from NewPoint

12  amounting to $74,183.00. (Id. at ¶¶ 61-63.) As a result of the

13  payments made to him, the Defendant received $34,183.00 more than

14  his Principal Investment such that the Receiver is therefore

15  entitled to recover from the Defendant damages in a sum of

16  $34,183.00 with interest. (Id. at ¶ 69.)

17      Between February and April 2012, the Receiver's process server

18  made twenty service attempts at the Defendant's last known

19  residential address in Woodland Hills, California ("Residence") at

20  various hours of the day and evening to no avail. (Decl. re

21  Diligence by Miguel Leyva.) Following the failed service attempts,

22  the Receiver's counsel contacted attorney David Willingham who had

23  previously indicated he represent the Defendant in this matter.

24  (Id. at 6.) Receiver's counsel asked Willingham whether he would

25  accept service of summons and complaint on behalf of the Defendant,

26  which Willingham agreed to do. (Davidson Decl. in Opposition to

27  Motion to Set Aside/Vacate Default ¶ 2.) Receiver's counsel

28  prepared a Notice of Acknowledgment of Receipt of Summons and

1  Complaint, and sent it by Fedex to Willingham, along with copies of

2  Summons and Complaint. (Id.) On August 1, 2012, Receiver's counsel

3  contacted Willingham about returning the Acknowledgment of Receipt

4  of Summons and Complaint. (Id. ¶ 3.) Willingham responded that the

5  firm did not represent the Defendant in the present matter and that

6  he would "get them to sign it and send it to [Willingham] for

7  return to [Receiver's counsel]." (Id.) Willingham did not return

8  any documents to Receiver's counsel. (Id. ¶ 4.)

9      Receiver's counsel conducted further proprietary database

10  searches in an attempt to locate additional information as to the

11  whereabouts of the Defendant. (Eandi Decl. in support of Motion for

12  Service ¶ 5.)  On December 27 and 28, 2012, three additional

13  unsuccessful service attempts were made at the Residence.

14  (Affidavit of Process Server, Dkt. No. 11-3.)  On February 11,

15  2013, the Receiver filed a motion to allow him to serve the

16  Defendant by publication. (Dkt. No. 11) While the Court

17  subsequently granted that motion on February 20, 2013, (Dkt. No.

18  13) the Receiver did not serve the Defendant by publication. (Proof

19  of Service, Dkt. No. 12.) The Defendant was sub served, by service

20  on his wife, Nazanian Ghomi, at their home on February 14, 2013,

21  and then by US mail. (Dkt. No. 12.) The Defendant later confirmed

22  receipt of the documents. (Ghomi Declaration ¶ 7.)

23      April 1, 2013, filed and served on the Defendant a request for

24  entry of default. (Dkt. No. 14.)  The clerk entered default on

25  April 2, 2013.  The Receiver filed a motion for default judgment on

26  April 10, 2013.  The Defendant took no action until April 25, 2013,

27  when the Defendant called counsel for the Receiver and told him

28  that the Defendant did not believe he owed anything because, he

1    contended, he had loaned $40,000 to his brother, using NewPoint as

2    an intermediary. On May 13, 2013, counsel for the Receiver received

3    a telephone call from David Scott Kadin ("Kadin") in which Kadin

4    stated that his firm might represent the Defendant and requested

5    that the Receiver set aside the Defendant's default. (Kadin

6    Declaration ¶ 2.) Counsel for the Receiver denied this request. Id.

7         No appearance was made on behalf of the Defendant at the May

8    20, 2013, hearing on the Receiver's Motion for Default Judgment.

9    (Minutes, Application for Default Judgment, Dkt. No. 16.)  On May

10   20, 2013, the Court granted the Receiver's Motion for Default

11   Judgment and judgment was entered. (Dkt. No. 19.) On June 25, 2013,

12   the Defendant filed the present Motion to set aside the default

13   judgment. (Dkt. No. 20.)

14        Defendant moves to set aside the default and default judgment

15   on the basis that he was not personally served with the Complaint

16   and he was not aware that he was responsible for responding to the

17   court documents delivered to his previous attorney. (Mot. at 4-5.)

18   The Defendant also contends that he has a meritorious defense to

19   the action in that he never invested in NewPoint but rather loaned

20   money to his brother and used NewPoint as the intermediary. (Id. at

21   5.)

22   **II.  LEGAL STANDARD**

23        A Court has the power to set aside a default for "mistake,

24   inadvertence, surprise or excusable neglect." Fed. R. Civ. P.

25   60(b)(1); Lemoge v. U.S., 587 F.3d 1188, 1192 (9th Cir. 2009).  In

26   the Ninth Circuit, a motion to set aside a default judgment can be

27   denied when "(1) the plaintiff would be prejudiced if the judgment

28   is set aside, (2) defendant has no meritorious defense, or (3) the

4

1  defendant's culpable conduct led to the default." <u>In re Hammer</u>,
2  940 F.2d 524, 525-26 (9th Cir. 1991).  The test is disjunctive, and
3  "[o]nly one of those factors need be present to justify denial of a
4  motion to set aside a default judgment." <u>McManus v. American
5  States Co.</u>, 201 F.R.D. 493, 500 (C.D. Cal. 2000)(citing <u>In re
6  Hammer</u>, 940 F.2d at 526.).  The burden is on the party seeking to
7  vacate the default judgment to demonstrate that the factors are
8  present and favor vacating the judgment.<u>TCI Grp. Life Ins. Plan v.
9  Knoebber</u>, 244 F.3d 691, 696 (9th Cir. 2001).
10 **III. DISCUSSION**
11      The Defendant contends that the default and default judgment
12 were entered against him due to his mistake, surprise and/or
13 excusable neglect and therefore, the default and default judgment
14 should be set aside and vacated.
15      **A. Service**
16      As a threshold matter, the Defendant argues that he was not
17 personally served with the Complaint and Summons.  Under the
18 Federal Rules of Civil Procedure, an individual has been properly
19 served where service is made by leaving copies of the summons and
20 complaint at defendant's "dwelling or usual place of abode with
21 someone of suitable age and discretion who resides there." Fed. R.
22 Civ. P. 4(e)(2)(B).  Here, the Receiver effected service to
23 Defendant's wife Nazanian Ghomi at Defendant's home at 20857 Martha
24 Street, Woodland Hills, CA, as well as by U.S. mail.  (Proof of
25 Service, Dkt. No. 12.)  The court finds that service was proper.
26      **B. Culpable Conduct**
27      "A defendant's conduct is culpable if he has received actual
28 or constructive notice of the filing of the action and failed to

5

1  answer." Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th

2  Cir. 1987).  Defendant argues that he did not respond to the

3  Summons and Complaint because of his mistaken assumption that these

4  documents related to the SEC Action and that since he was no longer

5  part of that action, he was not required to respond.  If the

6  default judgment is obtained because of a mistaken understanding of

7  the facts concerning the duty to respond, relief may be granted.

8  See 999 v. Cox & Co., 574 F.Supp. 1026, 1029 (E.D.M.O

9  1983)(granting relief where a defendant's answer was late because

10 defendant's counsel acted in good faith reliance on the client's

11 mistaken statement as to the date the summons was received).  The

12 mistake must be excusable under the circumstances, and relief will

13 not be granted where a party should know the consequence of

14 ignoring service of process.  Direct Mail Specialists, Inc. v.

15 Eclat Computerized Technologies, Inc., 840 F.2d 685, 690 (9th Cir.

16 1988).

17      The Defendant's asserted reason for not answering the

18 Complaint was that he was previously represented by an attorney

19 relating to a grand jury subpoena in the SEC action, and that he

20 mistakenly assumed that the Summons related to that action.  The

21 Summons in this case states, "A lawsuit has been filed against you"

22 and named him in capital letters as a defendant.

23      Even if the court gives Defendant, a non-lawyer, the benefit

24 of the doubt and finds that he made a mistake as to the Summons,

25 subsequent conduct indicates that he was not innocent in the entry

26 of default judgment.  Even if Defendant has an excuse of mistake

27 for not answering the Complaint, based on his phone calls he

28 appears to have understood the need to respond to the Receiver's

1  application for default judgment.  On April 25, 2013, after the
2  Receiver had filed an application for default judgment on April 1,
3  Defendant called the Receiver and stated his defense.  (Davidson
4  Decl. ¶ 7.)  On May 13, 2013, Receiver's counsel received a phone
5  call from David Scott Kadin, who informed the Receiver that Kadin's
6  firm might represent Defendant and asked the Receiver to set aside
7  the default, which the Receiver declined to do.  (Id. ¶ 9.)
8  Neither Defendant nor counsel for the Defendant appeared at the
9  hearing on the application for default judgment on May 20, 2013.
10  (Id. ¶ 10.)

11     Because both Defendant and his representative phoned the
12  Receiver regarding the application for default judgment, Defendant
13  appears to have been aware of the application and concerned about
14  it.  Excusable neglect "encompasses situations where the failure to
15  comply with a filing deadline is attributable to negligence" and
16  "includes omissions caused by carelessness".  Lemoge, 587 F.3d at
17  1192 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,
18  507 U.S. 380, 394 (1993)).  Defendant's failure to defend the
19  default judgment does not fall within excusable neglect.  Defendant
20  has given no explanation for why he should be excused for not
21  opposing the default judgment application.

22     **C. Meritorious Defense**

23     A motion to set aside a default judgment will not be granted
24  when the Defendant does not have a "meritorious defense."  In re
25  Hammer, 940 F.2d at 525.  Defendant claims as a defense that he did
26  not invest in Newpoint but rather made a loan to his brother and
27  used Newpoint as the intermediary.  The court finds that the
28  evidence Defendant offers to support this claim is unconvincing.

7

1    The evidence consists of the accounting prepared by Receiver's

2    accountants with handwriting of an unknown origin indicating "home

3    repair" next to certain checks.  This does not in any way support

4    Defendant's claim that he loaned money to his brother through

5    Newpoint, or that six of the checks to him were given to him by

6    Farahi so that he could cash them.  The court finds that Defendant

7    has not presented a meritorious defense.

8         **D. Prejudice to Plaintiff**

9         The court finds that Plaintiff would be prejudiced if the

10   default judgment were set aside.  The Receiver has expended

11   attorney's fees in seeking the default and default judgment against

12   Defendant, and the estate and innocent investors will be prejudiced

13   if the judgment is set aside and the Receiver is obligated to

14   expend more estate resources in prosecuting the action,

15   particularly when Defendant has no meritorious defense.

16   **IV.   CONCLUSION**

17        For the above reasons, Defendant's motion to set aside and

18   vacate the default and default judgment is DENIED.

19

20

21   IT IS SO ORDERED.

22

23   Dated: July 30, 2013

                                      DEAN D. PREGERSON
                                      United States District Judge

24

25

26

27

28

8